UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| JACK HURST, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:23-CV-515-CHB |
| | ) | |
| v. | ) | |
| | ) | |
| CHARLES C. SIMMS, III, *et al.*, | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Several motions are pending before the Court. First, Defendants Charles Simms, III, and Diane Thompson filed a Motion to Dismiss. [R. 5]. Plaintiff Jack Hurst later filed a Motion for Extension of Time to respond to the Defendants' motion, [R. 7], before filing a Motion for Leave to Amend his original complaint, [R. 10]. The motions are ripe for review. For the following reasons, the Court will deny Plaintiff's request for leave to amend as futile and dismiss this action.

## I.      Background

On October 2, 2023, then-*pro se* Plaintiff Jack Hurst initiated this action against Defendants Charles Simms, III, Circuit Judge for the 10th Circuit of Kentucky, and Diane Thompson, Circuit Court Clerk for the 10th Circuit of Kentucky. *See generally* [R. 1 (Complaint)]. Hurst alleged Judge Simms and Clerk Thompson "deprive[d] plaintiff equal protection under the law by conspiring and colluding to direct plaintiff's cases in the Kentucky 10th Judicial District to Simms," and "attempt[ing] to coerce plaintiff into not running for office in the [Nelson County Judge Executive] election." *Id.* at ¶¶ 10, 11. Shortly thereafter, on October 24, 2023, the Defendants moved to dismiss Hurst's complaint on numerous grounds under Federal Rules of Civil Procedure 12(b)(1). (2), and (6). *See* [R. 5-1, p. 1].

Nearly two months later, on December 19, 2023, counsel entered an appearance on Hurst's behalf, *see* [R. 6 (Notice of Appearance)], and contemporaneously moved for an extension of time to respond to the Defendants' motion, [R. 7]. The Defendants opposed the requested extension of time, arguing that Hurst failed to show good cause and excusable neglect under Rule 6. [R. 9]. On December 28, 2023, the day after Defendants responded in opposition to his request for an extension of time, Hurst moved to amend his original complaint, [R. 10], and attached the proposed Amended Complaint, [R. 10-1], alleging constitutional and other violations "under 42 U.S.C. § 1983 and *Bivens* action and 42 U.S.C. § 1985 and other actionable laws." *Id.* at pp. 4–6. That same day, Hurst also responded to Defendants' Motion to Dismiss. [R. 11]. On January 18, 2024, the Defendants responded to Hurst's Motion to Amend, reiterating the same arguments presented in their Motion to Dismiss and suggesting that amendment would be futile. [R. 12]. On February 1, 2024, Hurst filed his reply in support of the Motion to Amend. [R. 13].

The Court will first grant Hurst's request for an extension of time to respond to the Defendants' motion [R. 7] and will consider his response [R. 11] as timely filed. Notwithstanding, the Court finds that the Defendants' Motion to Dismiss [R. 5] must be granted and Hurst's Motion to Amend [R. 10] denied.

## II.     Legal Standards

Several standards are at play in the Court's analysis.[1] First and foremost, "Fed. R. Civ. P. 12(b)(1) requires dismissal when a federal court lacks subject matter jurisdiction." *Embry v.*

---

[1] The Court notes, however, that although the Defendants moved for dismissal under Federal Rules of Civil Procedure 12(b)(1), (2) and (6), they make no arguments implicating 12(b)(2) related to personal jurisdiction. Similarly, the Defendants cite to Rule 12(b)(1) but stop short of even outlining the applicable standard. They do, however, argue for dismissal under the Eleventh Amendment, which case law makes clear deprives the court of subject matter jurisdiction over claims which it applies. The Court thus considers the Defendants' Motion under Rules 12(b)(1) and (6) but declines to consider it under Rule 12(b)(2), since the Defendants' have wholly failed to develop any argument for dismissal on that ground.

*Kotlarisc*, No. 1:22-CV-006, 2022 WL 17327290, at \*1–2 (S.D. Ohio Nov. 29, 2022), aff'd sub nom. *Embry v. Kotlarsic*, No. 22-4027, 2023 WL 4287190 (6th Cir. June 30, 2023). When considering a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, "[t]he Court must construe the complaint in the light most favorable to the Plaintiffs; however, the Court need 'not presume the truth of factual allegations pertaining to [its] jurisdiction to hear the case.'" *Skatemore, Inc. v. Whitmer*, 40 F.4th 727, 731–32 (6th Cir.), cert. denied, 143 S. Ct. 527 (2022) (citing *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1045 (6th Cir. 2015)).

"Before considering a suit against a state," or by extension, state officials acting in their official capacity, "a federal court must determine whether the Eleventh Amendment bars jurisdiction." *Morgan v. Bd. of Pro. Resp. of the Supreme Ct. of Tennessee*, 63 F.4th 510, 515 (6th Cir. 2023) (citations omitted). "A motion to dismiss under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction is the proper vehicle to assert Eleventh Amendment immunity." *Lee Testing & Eng'g, Inc. v. Ohio Dept. of Transp.*, 855 F.Supp.2d 722, 725 (S.D. Ohio 2012); *see also generally Skatemore*, 40 F.4th at 731 (affirming district court's dismissal under 12(b)(1) on Eleventh Amendment grounds). "[T]he Eleventh Amendment is a true jurisdictional bar . . . and, once raised as a jurisdictional defect, must be decided before the merits." *Russell*, 784 F.3d at 1046. The Court therefore must first consider the Defendants' Motion to Dismiss under Rule 12(b)(1).

Next, assuming the Court retains jurisdiction over at least some remaining claims, the Court considers Hurst's Motion to Amend under Rule 15 and, relatedly, the Defendants' Motion to Dismiss under Rule 12(b)(6). "Federal Rule of Civil Procedure 15(a)(2) provides that a court 'should freely give leave to amend a complaint when justice so requires,'" but "the right to amend is not absolute or automatic." *Islamic Ctr. of Nashville v. Tennessee*, 872 F.3d 377, 386 (6th Cir.

3

2017) (quoting *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 551 (6th Cir. 2008)) (cleaned up).  For example, "a court need not grant leave to amend where amendment would be futile." *Masaebi v. Arby's Corp.*, 852 F. App'x 903, 910 (6th Cir. 2021) (internal citation and quotation marks omitted).  "[F]utility of amendment . . . is simply defined as an amendment to the complaint that would not survive a [Federal Rule of Civil Procedure] 12(b) motion to dismiss." *500 Assocs., Inc. v. Vt. Am. Corp.*, 496 F. App'x 589, 593 (6th Cir. 2012) (citing *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is "plausible on its face" if the factual allegations in the complaint "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Determining if a complaint sufficiently alleges a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679 (citation omitted). Further, "[t]he complaint is viewed in the light most favorable to [Plaintiff], the allegations in the complaint are accepted as true, and all reasonable inferences

4

are drawn in [Plaintiff's] favor." *Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016) (citing *Jelovsek v. Bredesen*, 545 F.3d 431, 434 (6th Cir. 2008)).

Simply stated, when ruling on a motion to dismiss under Rule 12(b)(6), the Court "must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (per curiam). In doing so, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.    Analysis

As a preliminary matter, in the caption of Hurst's proposed Amended Complaint, he indicates he is bringing claims against each Defendant in their individual and official capacities. *See* [R. 10-1 (Proposed Amended Complaint), p. 1]. Beyond the case caption, however, Hurst does not indicate what claims he asserts against the Defendants in their individual versus official capacities, and as the Defendants correctly point out, "his allegations against them pertain solely to acts taken within the course of their official duties as Judge and Court Clerk." [R. 12, p. 10]. In any case, as discussed below, Hurst's individual capacity claims against the Defendants (to the extent his proposed Amended Complaint can be construed to assert any) fail for many of the same reasons his official capacity claims fail.

#### A.  Rule 12(b)(1) – Eleventh Amendment (Official Capacity Claims Only)

As stated, "Fed. R. Civ. P. 12(b)(1) requires dismissal when a federal court lacks subject matter jurisdiction." *Embry*, 2022 WL 17327290, at *1–2. The Eleventh Amendment "deprives federal courts of subject-matter jurisdiction when a citizen sues his own State unless the State

waives its immunity or Congress abrogates that sovereign immunity." *Russell*, 784 F.3d at 1046. Because "the Eleventh Amendment is a true jurisdictional bar," it "must be decided before the merits." *Id.* Consequently, the Court turns first to whether the Eleventh Amendment applies to Hurst's claims against the Defendants in their official capacities.

The Eleventh Amendment reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Thus, "[b]efore considering a suit against a state, a federal court must determine whether the Eleventh Amendment bars jurisdiction." *Morgan*, 63 F.4th at 515. The Eleventh Amendment "grants sovereign immunity to the states in most cases, which prevents federal courts from having jurisdiction in lawsuits brought by private plaintiffs where the state is a defendant." *Id.* (citing *Whole Woman's Health v. Jackson*, 142 S. Ct. 522, 532 (2021)). "Such immunity also extends to departments and agencies that are arms of the state, as well as state officers acting in their official capacity." *Id.* (citing *Alabama v. Pugh*, 438 U.S. 781, 782 (1978)). And it bars suits "for injunctive, declaratory or monetary relief." *Thiokol Corp. v. Dep't of Treasury, State of Mich. Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993); *see also Ward v. City of Norwalk*, 640 F. App'x 462, 465 (6th Cir. 2016) (finding, for "Eleventh Amendment purposes, [] plaintiffs' money-damage claims against Judge [] and Clerk [of Court] in their official capacities are [] barred").

"That said, courts maintain jurisdiction in some circumstances despite sovereign immunity," and a federal court "has subject-matter jurisdiction to hear a constitutional claim against an official acting under color of state law if the claim fits within the exception of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)." *Morgan*, 63 F.4th at 515. Under that exception, "suits against state officials seeking equitable relief for ongoing violations of federal

6

law are not barred by the Eleventh Amendment." *Mich. Bell Tel. Co. v. Climax Tel. Co.*, 202 F.3d 862, 867 (6th Cir. 2000) (citing *Ex Parte Young*, 209 U.S. at 159–60). The doctrine applies only when the plaintiff sues for "prospective [injunctive] relief to end a continuing violation of federal law." *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 964 (6th Cir. 2013). Importantly, "[i]f the complaint fails to 'make clear what those ongoing violations are,' the exception does not apply." *Morgan*, 63 F.4th at 515 (quoting *Boler v. Earley*, 865 F.3d 391, 412 (6th Cir. 2017)). "Nor does the exception exist for injunctive relief 'based entirely upon past acts and not continuing conduct that, if stopped would provide a remedy to' the plaintiff." *Id.* (quoting *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003)).

As an initial matter, Hurst's proposed Amended Complaint fails to plausibly allege any specific violations of federal law, past or present, by the Defendants, as it contains only conclusory allegations concerning an elaborate scheme to prevent Hurst from running for political office. *See generally* [R. 10-1 (Proposed Amended Complaint)]. The proposed Amended Complaint offers the following "facts" that form the basis for Hurst's claims:

12. Plaintiff was interested in holding public office and made it known that he was intending on running for the Office of Judge Executive in Nelson County in 2018, in large part to dispel what he believes is systemic corruption throughout the County where Defendants and other unknown actors have held firm control over the County and the affected areas for a lengthy period of time.

13. Upon becoming aware of the plans of the Plaintiff, these Defendants, did in fact combine, conspire and confederate to interfere with the election efforts of the Plaintiff by any means necessary, including use of their official office to accomplish the nefarious acts and to ruin the Plaintiff financially and politically. These acts involve election interference, rigging court proceedings, and other acts designed to interfere with, coerce and intimidate the Plaintiff into not running for office or withdrawing.

14. Although the election has passed, these Defendants have continued to attack and deprive the Plaintiff of his Constitutional rights through recent days as further detailed herein.

15. Upon making his intentions known, Defendant Thompson began a series of acts which violated the Federally protected Constitutional Rights of the Plaintiff, including his 5th, 6th, 8th & 14th amendment rights.

16. The acts of Thompson involved conspiring with Defendant Simms to make certain that Simms was assigned most of the cases involving the Plaintiff. Then they used Simms['s] position of trust to deprive the Plaintiff of due process and other Federally Protected Civil Rights, under the color of law, creating erroneous outcomes for purposes of subterfuge.

17. During the actions of the Defendants, they engaged in a series of due process violations which were designed to silence, destroy, and publicly humiliate the Plaintiff, including incredible acts such as placing the Plaintiff's property at the Courthouse steps under illegal orders and findings created for the purposes of public humiliation and stopping the Plaintiff from being electable at any time present or in the future.

18. Throughout the wrongful conduct of these Defendants, they engaged in a pattern of violations otherwise protected by the United States Constitution as well as Federal and State Laws which prohibit such misconduct.

19. As a last resort, these Defendants began engaging in acts of actual threats and intimidation against the Plaintiff to prevent him from running for office and then to coerce him into withdrawing his election bid, once the election processes began.

20. Upon finality of the election, these Defendants continued to harass, intimidate and violate the Plaintiff well into 2023.

*Id.* at pp. 3–4, ¶¶ 12–20. Yet, within these "facts," the proposed Amended Complaint does not describe any *specific* actions that either Defendant took or failed to take in the course of the alleged "conspiracy" against Hurst. Rather, it makes sweeping assertions that the Defendants "attack[ed] and deprive[d] the Plaintiff of his Constitutional rights," and "engaged in a series of due process violations," without providing any details as to *how* they did so. *Id.* at ¶¶ 14, 17. *See infra* Section III(B).

But even if the proposed Amended Complaint included factual support for these allegations, there is no indication that the alleged constitutional violations are ongoing. *See Boler*, 865 F.3d at 412 (finding *Ex Parte Young* doctrine did not apply where plaintiffs argued defendants

"continue to play an active role in . . . producing ongoing violations of their constitutional rights" but complaint focuses on conduct that took place years prior and "does not make clear what those ongoing violations are"). Here, the Nelson County Judge Executive election in which Hurst alleges the Defendants prevented him from running took place in 2018. *See* [R. 1, p. 2, ¶ 11]. And though the proposed Amended Complaint offers generally, "Although the election has passed, these Defendants have continued to attack and deprive the Plaintiff of his Constitutional rights through recent days as further detailed herein," *id.* at ¶ 14, review of the entire proposed Amended Complaint does not reveal any "further details" of the Defendants' alleged actions. Along the same lines, the proposed Amended Complaint alleges that "the Defendants continued to harass, intimidate and violate the Plaintiff well into 2023," *id.* at ¶ 20, but this fails to allege that any violations were ongoing as of the date of the proposed Amended Complaint, filed December 28, 2023. *See generally* [R. 10-1]. But even if Hurst did sufficiently allege that the Defendants' actions were "ongoing" at that time, Hurst has still failed to plausibly allege with specificity what those ongoing violations of federal law actually are.

As a closing note on this point, other than incorrectly outlining the *Ex Parte Young* standard, *see* [R. 13, pp. 10–11], Hurst fails to meaningfully respond to the substance of the Defendants' argument. Indeed, Hurts's only argument that the Eleventh Amendment does not bar his official capacity claims is the fact that he "clearly listed *Ex Parte Young* in his Complaint due to the conduct of these Defendants, the danger to the public, and the other wrongful behavior of these Defendants. Therefore, any claims with respect to immunity in these areas would survive a motion to dismiss[.]" *id.* at 11. With this, Hurst does not even engage with the *Ex Parte Young* standard orexplain how the proposed Amended Complaint outlines any constitutional violations

that are ongoing. The *Ex Parte Young* doctrine is not applicable here, and the Eleventh Amendment thus bars his claims against the Defendants in their official capacities.

For all these reasons, the Court must dismiss Hurst's official capacity claims without prejudice for lack of jurisdiction. *See O'Connor v. Eubanks*, 83 F.4th 1018, 1024 (6th Cir. 2023) ("When courts dismiss for lack of jurisdiction, the general rule is to do so without prejudice."); *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005) (explaining that dismissal of claim on Eleventh Amendment immunity grounds should be without prejudice).

### B. Rule 12(b)(6) – Official and Individual Capacity Claims

As stated, though Hurst moves to amend his Complaint, "a court need not grant leave to amend where amendment would be futile," *Masaebi*, 852 F. App'x at 910, in other words, when the amended complaint "would not survive a [Federal Rule of Civil Procedure] 12(b) motion to dismiss." *500 Assocs.*, 496 F. App'x at 593 (citation omitted). To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (2009) (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief,'" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

With these standards in mind, even if the Eleventh Amendment did not bar Hurst's official capacity claims, the Court finds that his individual and official capacity claims would fail on other grounds. Hurst's proposed Amended Complaint does not clearly set forth any specific causes of action, but instead lists five paragraphs with largely repetitive language:

### <u>COUNT I</u>

10

Defendants did in fact combine, conspire, and confederate, acting together and at times acting alone to violate the civil rights of Hurst by engaging in continual wrongful and harmful acts through misuse of their public positions under the color of law, including knowingly through threats, intimidations, and other wrongful acts. Actionable under 42 U.S.C. § 1983 and Bivens action and 42 U.S.C. § 1985 and other actionable laws.

### COUNT II

Defendants did knowingly combine conspire and confederate acting together and at times acting alone to violate the civil rights of Hurst by engaging in continual wrongful and harmful acts through misuse of their public positions under the color of law, including knowingly creating false legal proceedings designed to silence Hurst, a [sic] in violation of the First Amendment of the Constitution of the United States. Actionable under 42 U.S.C. § 1983 and 42 U.S.C. § 1895 and other actionable laws.

### COUNT III

Defendants did in fact combine, conspire, and confederate, acting together and at times acting alone to violate the civil rights of Hurst by engaging in continual wrongful and harmful acts through misuse of their public positions under the color of law, including a complete depravation [sic] of Due Process to allow them to unlawfully take, obstruct and destroy property of Hurst in violation of the Fifth and Sixth Amendments of the Constitution of the United States. Actionable under 42 U.S.C. § 1983 and Bivens action and 42 U.S.C. § 1985 and other actionable laws.

### COUNT IV

Defendants did in fact combine, conspire, and confederate, acting together and at times acting alone to violate the civil rights of Hurst by engaging in continual wrongful and harmful acts through misuse of their public positions under the color of law, including knowingly harassing, intimidating, and publicly humiliating Hurst designed to cause public rebuke of Hurst in violation of the Eighth Amendment of the Constitution of the United States, Actionable under 42 U.S.C. § 1983 and Bivens action and 42 U.S.C. § 1985 and other actionable laws.

### COUNT V

Defendants did in fact combine, conspire, and confederate, acting together and at times acting alone to violate the civil rights of Hurst by engaging in continual wrongful and harmful acts, including misuse of their public offices, under the color of law to threaten and intimidate the Plaintiff to prevent him from running for elected officer in violation of the Fourteenth Amendment of the Constitution of the United States. Actionable under 42 U.S.C. § 1983 and Bivens action and 42 U.S.C. § 1985 and other actionable laws.

[R. 10-1 (Proposed Amended Complaint), pp. 4–6].

11

Nor does Hurst offer any specific factual support for these allegations. As discussed above, the proposed Amended Complaint offers approximately one page of "facts" that form the basis for Hurst's claims. Those facts explain Hurst's desire and attempt to run for political office in 2018, which the Defendants allegedly "combine[d], conspire[d] and confederate[d] to interfere with . . . by any means necessary, including use of their official office to accomplish the nefarious acts and to ruin the Plaintiff financially and politically." *Id.* at ¶ 13. This included "a series of" unspecified "acts which violated the Federally protected Constitutional Rights of the Plaintiff, including his 5th, 6th, 8th & 14th amendment rights" and a similarly unspecified "series of due process violations which were designed to silence, destroy, and publicly humiliate the Plaintiff." *Id.* at ¶¶ 15, 17.

Even if the Court were to allow the proposed Amended Complaint, prepared by Hurst's new counsel, to stand as the operative complaint in this action, the Court struggles to discern from it any causes of action that have been pleaded with the required specificity to avoid dismissal. *See generally* [R. 10-1]. As mentioned previously, the proposed Amended Complaint does not describe any *specific* actions by either Defendant taken in the course of the alleged "conspiracy" against Hurst. The bald allegations that the Defendants "attack[ed] and deprive[d] the Plaintiff of his Constitutional rights," and "engaged in a series of due process violations," offer no factual support on which the Court could reasonably infer that Hurst is entitled to relief. *Id.* at ¶¶ 14, 17. Put simply, the proposed Amended Complaint fundamentally fails to provide "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678.

Replying to the Defendants' arguments on this issue, Hurst offers two paragraphs purporting to explain how he has, in fact, stated a plausible claim for relief against the Defendants.

He offers generally that, "[t]he acts complained of involve individuals who are judicial officers who have worked inside and outside of their official office/duties to interfere with Hurt's Constitutional rights to a variety of things, such as free speech to share his political ideas through a campaign for public office" and submits "[i]t is without dispute that Defendants have no official reason to violate the public's free speech rights." [R. 13, pp. 11–12]. As an "example," Hurst continues, "[t]he Defendants misused their public offices to intercept the natural election process relating to Hurst, in violation of the First Amendment of the Constitution of the United States." *Id.* at 12. But the Court again emphasizes that this type of conclusory allegation is not sufficient to withstanding dismissal under Rule 12(b)(6).

Even assuming Hurst's proposed Amended Complaint did more than "offer[] labels and conclusions" and "tender[] naked assertions devoid of further factual enhancement," *id.* at 678, and even if Hurst's official capacity claims were not barred by the Eleventh Amendment, the Defendants would be entitled to judicial immunity and quasi-judicial immunity on both the official and individual capacity claims against them. "[J]udicial immunity" is "shorthand for the doctrine of absolute immunity that operates to protect judges and quasi-judicial officers alike from suit in both their official and individual capacities." *Dixon v. Clem*, 492 F.3d 665, 674 (6th Cir. 2007) (citations omitted). "Judicial immunity is embedded in the long-established principle that 'a judicial officer, in exercising the authority vested in him, should be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Tyler v. City of Henderson, KY*, No. 4:21CV-P114-JHM, 2022 WL 1110337, at *3 (W.D. Ky. Apr. 13, 2022) (quoting *Stump v. Sparkman*, 435 U.S. 349, 355 (1978)). "A judge is entitled to immunity from suit even when accused of acting in bad faith, maliciously, or corruptly." *Id.* (citation omitted).

13

"This doctrine applies to judges in their performance of judicial functions" and "to court officers who 'perform[] tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer who is immune,' such as clerks." *Bradley v. Ohio Ethics Comm'n*, No. 2:23-CV-00024, 2023 WL 5396362, at \*6 (S.D. Ohio Aug. 22, 2023) (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)). "When applied to court officers rather than judges, this is referred to as 'quasi-judicial immunity.'" *Bradley*, 2023 WL 5396362, at \*6; s*ee also Ward v. City of Norwalk*, 640 F. App'x 462, 467 (6th Cir. 2016) (affirming district court's finding that clerk of court was entitled to quasi-judicial immunity).

"Judicial immunity can be overcome in only two situations—for non-judicial actions, i.e., actions not taken in the judge's judicial capacity, or for actions, though judicial in nature, which are taken in the complete absence of all jurisdiction." *Tyler*, 2022 WL 1110337, at \*3 (citing *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991); *Stump*, 435 U.S. at 356–57). "Whether an action is judicial depends on the nature and function of the act, not the act itself," and determining whether an action is judicial "typically turns on two factors set forth by the Supreme Court[.]" *Dixon*, 492 F.3d at 674 (citing *DePiero v. City of Macedonia*, 180 F.3d 770, 784 (6th Cir.1999)). "First, looking to the nature of the act, courts must determine whether it is a function normally performed by a judge. . . . Second, looking to the expectations of the parties, courts must assess whether the parties dealt with the judge in his or her judicial capacity." *Id.*

As stated, the proposed Amended Complaint alleges that the Defendants, acting alone and in concert, "violate[d] the civil rights of Hurst by engaging in continual wrongful and harmful acts through misuse of their public positions under the color of law" in an attempt to "silence, destroy, and publicly humiliate" Hurst and prevent him from running for political office. [R. 10-1 (Proposed Amended Complaint), pp. 4–6; p. 4, ¶ 17]. Even accepting Hurst's bare-boned

14

allegations as true and construing all reasonable inferences in his favor, the proposed Amended Complaint points only to actions taken in the course and scope of Judge Simms and Clerk Thompson's "performance of judicial functions." *Bradley*, 2023 WL 5396362, at *6. Indeed, though Hurst argues that judicial immunity should not apply in this case, he characterizes the Defendants' actions as "*use of their official office* to accomplish the nefarious acts and to ruin the Plaintiff financially and politically" by "mak[ing] certain that Simms was assigned most of the cases involving the Plaintiff" and "us[ing] Simms['s] position of trust to deprive the Plaintiff of due process and other Federally Protected Civil Rights, under the color of law, creating erroneous outcomes for purposes of subterfuge." [R. 10-1 (Proposed Amended Complaint), p. 4, ¶ 16] (emphasis added).

The only such "nefarious acts" and "erroneous outcome" the proposed Amended Complaint elaborates on with any semblance of particularity, however, is "placing the Plaintiff's property at the Courthouse steps under illegal orders and findings created for the purposes of public humiliation and stopping the Plaintiff from being electable at any time present or in the future." *Id.* at ¶ 17. But issuing a court order—however "erroneous" or "illegal" Hurst believed the order to be—is a discernably judicial act within Judge Simms's jurisdiction. That is, Judge Simms issuing a court order is "a function normally performed by a judge" that would naturally come with Hurst "deal[ing] with [Judge Simms] in his [] judicial capacity." *Dixon*, 492 F.3d at 674. The enforcement of Judge Simms's order, which allegedly resulted in Hurst's personal property being placed on the courthouse steps, is likewise a judicial function. *See Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (finding that, for immunity purposes, "enforcing or executing a court order is intrinsically associated with a judicial proceeding").

15

Similarly, on Hurst's claim that the Defendants were "mak[ing] certain that [Judge] Simms was assigned most of the cases involving" him, [R. 10-1 (Proposed Amended Complaint), ¶ 16], the Defendants' points are well taken. They explain that "[a]s Chief Judge of the 10th Judicial Circuit, Judge Simms has authority to regulate the random assignment of cases and 'reassign cases from one judge to another as necessary or convenient.'" [R. 12, p. 6] (quoting Kentucky Supreme Court Rule 1.040(4)(a) and 1.040(3)(d)). Thus, even accepting as true Hurst's claim that Simms was reassigning cases for an improper purpose, the recusal from and/or reassignment of cases is "a function normally performed by a judge" that can be reasonably expected when "deal[ing] with [a] judge in his or her judicial capacity." *Dixon*, 492 F.3d at 674. In other words, that allegation concerns an action squarely within Judge Simms's jurisdiction, and not "in the complete absence of all jurisdiction." *Tyler*, 2022 WL 1110337, at *3; *see also Cox v. Braden*, 266 S.W.3d 792, 798 (Ky. 2008) ("Appellants argue Judge Braden had no jurisdiction to transfer the case because SCR 1.040(4)(a) requires random assignment of cases and because SCR 1.040(4)(c) requires 'all matters connected with a pending or supplemental proceeding to be heard by the judge to whom the proceeding was originally assigned,' absent good cause. . . . [T]his is at best a claim that Judge Braden acted erroneously *within* his jurisdiction[.]") (emphasis added). Judicial immunity plainly applies to Hurst's claims against Judge Simms.

The same goes for Clerk Thompson, "who [] work[s] under [Judge Simms]," and is a "court officer[], i.e., [she] assist[s] the judge in carrying out the necessary functions of the judiciary." *Bradley*, 2023 WL 5396362, at *6. Though, again, Hurst has failed to allege with specificity any actions taken by Clerk Thompson in the alleged conspiracy against him, the proposed Amended Complaint offers that "[t]he acts of Thompson involved conspiring with Defendant Simms to make certain that Simms was assigned most of the cases involving the Plaintiff," in an effort "to deprive

16

the Plaintiff of due process and other Federally Protected Civil Rights, under the color of law, creating erroneous outcomes for purposes of subterfuge." [R. 10-1, ¶ 16]. But for the same reasons just discussed, any involvement Clerk Thompson had in the assignment of cases is part of the core function of the judiciary and would constitute a "truly judicial act[] and not [an] administrative, legislative, or executive acts that simply happen to have been done by judges." *Dixon*, 492 F.3d at 674 (cleaned up) (citation omitted). Quasi-judicial immunity thus applies to Hurst's claims against Clerk Thompson.

It is noteworthy that the only case Hurst cites in support of his position that judicial immunity can be overcome in this case is a nearly half-century-old case out of the Seventh Circuit, *Harris v. Harvey*, 605 F.2d 330, 333 (7th Cir. 1979). Not only is *Harris* factually distinguishable from this case, it serves only to highlight the deficiencies in Hurt's own Complaint. In *Harris*, the court determined that the judge-defendant was not entitled to judicial immunity for alleged actions clearly taken in the "absence of all jurisdiction." *Id.* at 336. Those actions included: telling the chief of police "he was going to get that 'black bastard,'" in reference to the plaintiff, telling "many people that the plaintiff received preferential treatment and favors from the [] Police Department because he was black," reading arrest warrants issued for the plaintiff "over a radio station as well as a press release," meeting "with officials of the Wisconsin Attorney General's office and threaten[ing] to accuse plaintiff of bribery, ticket-fixing, and other illegal activities in the public press," "maliciously accus[ing] plaintiff of unlawful conduct and publicly [writing] that plaintiff was engaging in criminal conduct," and writing "a derogatory letter to [a] judge who had dismissed [] misdemeanor charges against the plaintiff and caus[ing] the letter to be read by the other Racine County judges." *Id.* at 333–35. Indeed, in *Harris*, the plaintiff alleged numerous, detailed instances of specific misconduct that allowed the Seventh Circuit to conclude "[s]uch acts were not judicial

17

because they were not functions normally performed by a judge." *Id.* at 336. Here, in contrast, Hurst has not alleged any similarly detailed instances of misconduct. Judicial and quasi-judicial immunity plainly applies to Hurst's bald assertions against Judge Simms and Clerk Thompson.

And other than offering this non-binding case, in his reply, Hurst attempts to rebut the Defendants' argument that judicial immunity applies in this case with unsupported generalizations. *See, e.g.*, [R. 13, p. 10] ("The Complaint is clear that these Defendants are judicial officials, but they are also engaging in acts outside of judicial functions and acting without jurisdiction. Other acts involve misconduct that is damaging to the Plaintiff in such a way that it directly interfered with their lawful judicial duties."). The reply wholly fails to explain *how* the Defendants acted "without jurisdiction," however, and simply regurgitates the same vague allegations included in the proposed Amended Complaint. As with the allegations in the proposed Amended Complaint, this is nothing more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," which "do not suffice." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555)).

## IV.    Conclusion

For all these reasons, Hurst's official capacity claims against the Defendants are barred by the Eleventh Amendment, and those claims must be dismissed without prejudice for lack of subject matter jurisdiction under Rule 12(b)(1). Moreover, Hurst's proposed Amended Complaint [R. 10-1] would not survive a Rule 12(b)(6) motion to dismiss because his claims are insufficiently pleaded and because the Defendants are entitled to judicial and quasi-judicial immunity, and amendment would therefore be futile. Accordingly, the Court will deny Hurst's Motion to Amend, grant the Defendants' Motion to Dismiss, and dismiss Hurst's individual capacity claims against the Defendants with prejudice.

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff Jack Hurst's Motion for Extension of Time [**R. 7**] is **GRANTED**.

2. Defendants Judge Charles Simms, III, and Diane Thompson's Motion to Dismiss [**R. 5**] is **GRANTED**.

3. Plaintiff Jack Hurst's Motion to Amend **[R. 10**] is **DENIED**.

4. Plaintiff Jack Hurst's claims against the Defendants in their official capacities are **DISMISSED without prejudice** for lack of subject matter jurisdiction. Hurst's claims against the Defendants in their individual capacities are **DISMISSED with prejudice**.

5. A separate judgment shall issue.

This the 25th day of July, 2024.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY

Cc: Counsel of Record